In the Matter of the Estate of ADOLPH HUMPFNER, Deceased.

Surrogate's Court, Montgomery County, March 21, 1938.

*Newton J. Herrick, Sr.*, for the petitioner.

*Milburn D. Smith* [*Wallace H. Sidney* of counsel], for the administrator.

*Harry A. Yetter* [*Leslie J. Waite* of counsel], for Anna Nusser and Theresa Mueller.

*Lawrence D. Wood* [*Oliver D. Burden* of counsel], for Charles K. Ahearn.

*Staley & Tobin* [*Ellis J. Staley* of counsel], for the American Surety Company.

Aulisi, S. This is an application to make the American Surety Company a party to certain proceedings relating to the opening of the decree of this court entered on February 6, 1935, which judicially settled the accounts of the administrator.

Adolph Humpfner died intestate on October 12, 1932, and Harry V. Berry was duly appointed administrator on December 30, 1932. The American Surety Company of New York executed and filed two separate official bonds for said administrator, one in the sum of $40,000 and one in the sum of $35,000. On June 20, 1934, the administrator filed a petition for a voluntary judicial settlement of his accounts. All necessary parties including the surety were duly cited. Subsequent to the filing of said account and on February 4, 1935, the administrator filed a supplemental account crediting the estate with additional savings accounts, not included in the original account, amounting to about $25,000.

On February 6, 1935, a decree was made and entered adjudicating the accounts of the administrator and among other things, provided:

" *Ordered, Adjudged and Decreed*, that the said administrator Harry V. Berry pay out to the said Anna Nusser and Theresa Mueller the said balance remaining on hand, to wit: The sum of $6,112.94, as follows:

| | |
|---|---|
| To Anna Nusser the sum of | $3,061.47 |
| To Theresa Mueller the sum of | $3,061.47 |

" *And it further is Ordered, Adjudged and Decreed*, that the said administrator H. V. Berry also deliver over to the said Anna Nusser and Theresa Mueller, the property remaining undisposed of and mentioned and decreed in Schedule B of the account of proceedings and Supplemental Account of Proceedings herein in the amount of $31,759.08, decreed as follows: "

There follows a schedule of the property and assets above referred to and directed to be turned over in kind to the sister distributees. The decree then recited:

" *And it is further Ordered, Adjudged and Decreed*, that upon making the payments aforesaid and filing with this court also receipts showing payment thereof and upon complying with the foregoing provisions of this decree that the said Harry V. Berry as such administrator and the American Surety Company of New York as surety upon his bond, be and they are hereby released and discharged from all responsibility herein."

Anna Nusser and Theresa Mueller were sisters of the decedent and the only known distributees when the aforesaid decree was entered. They resided in Germany and on a trip there in April, 1933, the administrator obtained a power of attorney from them. Mr. Berry, the administrator, on April 8, 1935, filed with this court a receipt and release from himself as attorney in fact for the sisters to himself as administrator.

Thereafter and on May 20, 1935, said two sisters of the decedent presented to this court their petition charging misconduct and fraud on the part of the administrator. Said petition set forth that the administrator had purchased the interest of the sisters in the estate on November 26, 1934, for the sum of $25,750.80. A substantial portion of this amount had been advanced to the sisters and the administrator credited himself with the payment thereof in his account. The estate was valued at more than $100,000. The fact that the administrator had purchased the interest of the sisters was not disclosed to this court prior to May 20, 1935.

The sisters asked that the decree of February 6, 1935, be vacated and set aside. An order to show cause was granted and on July 11, 1935, and subsequent to the return date of said order, on stipulation of the attorneys for the administrator and the attorneys for the said sisters, an order was made and entered opening the said decree, declaring the same inoperative and ineffective against the said sisters and not binding upon them. The order also directed the administrator to make and file on or before July 29, 1935, a new, full, complete and correct account of his proceedings and providing that the attorneys for the petitioners have twenty days after receipt of such account within which to file objections thereto. No notice was given to the American Surety Company upon the petition of the sisters to vacate and set aside the decree above mentioned nor was any notice given it of the order of July 11, 1935.

Helen Haas Humpfner, who had been judicially declared dead, was found by the administrator during the first week of August, 1935, presented to this court her petition on August 7, 1935, asking that she be declared the lawful widow of the decedent and entitled to take and share in his estate, and vacating and setting aside as to her the said decree of February 6, 1935, and all other proceedings, adjudications and judicial determinations made prior thereto. Of this application the American Surety Company had due notice and this court made and entered an order on October 21, 1935, granting the petitioner the relief asked.

On September 25, 1935, the administrator filed a new account to which objections were filed by the sisters of the decedent on November 14, 1935. The issues raised were duly referred to a referee on November 14, 1935, and said referee after taking nearly one thousand pages of testimony made his report on November 20, 1936, sustaining many of the objections and recommended that the administrator be surcharged with certain items amounting in excess of $10,000. The matter of confirmation of the referee's report and of the vacating of certain *ex parte* orders came before this court on order to show cause dated February 11, 1937, and this court rendered its decision on May 24, 1937 (*Matter of Humpfner*, 163 Misc. 91), confirming said report and opening the *ex parte* orders referred to therein. No notice of the application for the confirmation of the referee's report was given to the American Surety Company and no decree has been entered upon aforesaid decision of this court.

In view of the importance of the question involved, the facts have been stated somewhat in detail.

The American Surety Company contends that it was released from the obligations of its suretyship by the decree of February 6, 1935, and that not having had any notice of the application of the sisters to open and vacate said decree, it cannot now be brought in and made a party to the pending proceedings.

With this contention I am not in accord.

The statute provides that every administrator shall, before receiving letters of administration, execute a bond with sureties, to be approved by the surrogate, conditioned that he will faithfully discharge the trust reposed in him as such and obey all lawful decrees and orders of the Surrogate's Court touching the administration of the estate committed to him. (Surr. Ct. Act, § 121.) The bond here was voluntarily executed by the administrator and the American Surety Company and the surety having been duly cited upon the administrator's account of June 20, 1934, it was bound by the decree of February 6, 1935. The administrator did not carry out the terms of the decree as directed by this court. He never paid any money or turned over any property to the sisters distributees.

It is true that the administrator filed a receipt and release from himself as attorney in fact for the sisters to himself as administrator in an attempt to show that the terms of the decree had been carried out, but it is also a fact that the sisters never did receive the money and other property to which they were entitled.

There was no necessity for a power of attorney authorizing the administrator to receive money or personal property from this estate. Upon his appointment, Mr. Berry was invested with the legal title

to all the personal property of the deceased. The giving of the power of attorney did not prejudice the surety company and it could in no respect modify or change the statutory duties or obligations of the principal nor in any way affect the legal obligations or liabilities of the surety. The status of both, principal and surety, remained unchanged by the power of attorney (*Lahn* v. *Sullivan*, 116 App. Div. 669.)

With the filing of the petition by the sisters on May 20, 1935, this court's attention was called to the fact that the administrator had failed to carry out the terms of the final decree and said petition further alleged misconduct and fraud on the part of Mr. Berry. The administrator not only failed to file an answer to the serious charges in the petition but by stipulation consented that said decree be vacated and set aside. I have no doubt that this court had ample power to vacate and set aside the decree of February 6, 1935. (Surr. Ct. Act, § 20; *Deobold* v. *Opperman*, 111 N. Y. 531.)

It is unfortunate, of course, that the surety was not made a party to the proceeding vacating and setting aside the decree. This, however, at most, was a technical omission in procedure and I do not believe that the surety should be relieved from its responsibility particularly for the reason that no final determination has been made. I realize that the opening of a decree duly entered is not to be treated lightly or the discretionary power exercised except for substantial cause. But the circumstances which led to the opening of the decree were brought about solely by the conduct of the administrator and had he disclosed the true facts, a different decree would have resulted.

I believe that the ends of justice will be met by bringing in the surety and making it a party to the proceedings. The surety had notice of the widow's application to vacate and set aside said decree long before the administrator filed his new account on September 25, 1935, and before the filing of the objections and the appointment of the referee. It also had notice of the Charles K. Ahearn proceeding to impress a lien upon the assets of the estate for certain services rendered by him. Obviously, the surety knew, or at least should have known, that all was not well with the decree of February 6, 1935. In spite of these notices the surety never appeared in this court or manifested the slightest interest in these proceedings. The surety had an obligation and responsibility on its bond and it cannot expect to be released from same by a technical omission in procedure. The distributees in this estate have already suffered losses as a result of the faithlessness of the administrator.

Both the petitioner and the surety rely a great deal upon the decisions in *Cookman* v. *Stoddard* (132 App. Div. 485) and *Blake* v.

*National Surety Co.* (184 id. 57). A careful examination of these authorities satisfies me that while it is true that a surety must be made a party to a proceeding involving an account, it is equally true that if the surety was not in fact cited or did not appear, then before a decree of distribution can properly be made it must be brought in by supplemental citation.

Discussing the changes in procedure, Mr. Justice ROBSON in *Cookman* v. *Stoddard* (*supra*) says: " His position is that because the statute, as amended, requires that a surety must be made a party to proceedings for voluntary accounting of his principal before he will be bound by the provisions of the decree made in those proceedings, therefore, the obligation of the contract expressed in the bond is in some way impaired. But, it would seem, the amendment affects only the procedure to be adopted in enforcing a remedy on the bond. The obligation of the bond is not thereby impaired in the slightest, nor is the remedy *denied* or *made less effectual* than that which existed when the bond was filed. There is added a single necessary step in the formal procedure, viz., making the surety a party to the proceeding, and this being done the decree made therein is just as effectual in fixing the surety's obligation to respond in damages for a breach of the condition of the bond as it ever was." And earlier in his opinion he further states: " If the sureties were not in fact cited or did not appear, then before a decree of distribution could properly be made they must be brought in by supplemental citation."

In *Blake* v. *National Surety Co.* (*supra*) Mr. Justice LAUGHLIN not only follows the rule laid down in the *Cookman* v. *Stoddard* case but also says: " There can be no doubt but that the Surrogate's Court had authority and it *was its duty*, if called upon by any party in interest to issue a supplemental citation bringing in the new surety." The widow of the decedent is surely a party in interest in the case at bar.

The point made by the surety with respect to the limitations of sections 521 and 528 of the Civil Practice Act is untenable. Cases of fraud are not within the provisions of those sections. (*Furman* v. *Furman*, 153 N. Y. 309; *Gysin* v. *Gysin*, 263 id. 509.)

In conclusion, I, therefore, hold and decide that the American Surety Company should be brought in as a party to all the proceedings relating to the opening of the decree of February 6, 1935, and to all subsequent proceedings relating to the accounts of the administrator and the objections filed thereto, with the right and privilege to the said American Surety Company to offer such proof as may be material and relevant to the issues. By this procedure the surety will not have lost any rights or be prejudiced in any way.

Submit order, on notice, accordingly.